IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINDSLEY TROY GRIFFIN, | |
| Plaintiff, | 8:23CV356 |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY, | ORDER |
| Defendant. | |

This case comes before the court on Plaintiff's motion to compel responses to Plaintiff's Second Set of Interrogatories and Plaintiff's Third Request for Production of Documents. (Filing No. 62). For the reasons that follow, the motion to compel will be denied.

I.     FACTUAL BACKGROUND

Plaintiff alleges in this matter that Union Pacific violated the Americans With Disabilities Act (ADA) and the Colorado Anti-Discrimination Act (CADA) by engaging in disparate treatment, retaliation, and intentional discrimination. (Filing No. 1). He alleges in particular that he sought counseling during a difficult divorce and was diagnosed with post-traumatic stress disorder and generalized anxiety disorder. His supervisors changed their attitudes toward him after he disclosed his mental health conditions. He was approved for and began short-term disability leave, but was later terminated by his superior, Daniel Torres ("Torres"). (Filing No. 1 at 2-5). Defendant alleges Plaintiff was placed on administrative leave while it investigated certain negative statements he made during a

1

"MAPS Class" and that he inappropriately contacted complainants to inquire about the investigation while it was pending, against his employer's direct instructions. (Filing No. 69; Filing No. 68 at 26-29).

The parties have had several discovery disputes in this matter, primarily involving Plaintiff's attempts to obtain comparator evidence, or evidence of how he was treated compared to other similarly situated individuals. Defendant has maintained that Plaintiff's discovery requests fall outside of traditional comparator evidence and that no such evidence exists. The matters have been addressed several times by the undersigned, including during a discovery dispute call on September 5, 2025, after which the court concluded that Plaintiff's discovery requests were overbroad and extended beyond the scope of the Eighth Circuit's definition of similarly situated employees. Notwithstanding the close of written discovery, the court permitted Plaintiff to "revise and narrow the requests to identify with specificity the appropriate subset of employees, by management position, reporting hierarchy, type of conduct, and other relevant characteristics necessary to identify comparators, if any." (Filing No. 47).

On September 12, 2025, Defendant notified the court that it agreed to an *in camera* review of certain employment documents to determine whether the employees listed in Requests for Production 30-32 were comparators of Plaintiff. (Filing No. 52). After conducting that review, the court entered an order on October 17, 2025, and concluded that the employees identified by Plaintiff were unlikely to be considered similarly situated and the documents need not be produced. (Filing No. 56, restricted order). Plaintiff did not object.

Plaintiff served the supplemental discovery requests discussed during the September 5, 2025 call on September 15, 2025. (Filing No. 53). In his Second Set of Interrogatories and Third Request for Production of Documents, Plaintiff sought investigatory, disciplinary, and interactive process files for all General Manager, Superintendent of Train Operations (STO), Manager of Train Operations (MTO), and Manager of Yard Operations (MYO) employees in the Northern Region who were disciplined, demoted, or terminated

2

from January 2020 to April 2024, and who fit into the following categories: (1) took short-term disability while Torres was manager of the Northern Region; (2) requested a reasonable accommodation relating to a mental health disorder during that time period; (3) disclosed a mental health disorder to a supervisor or the human resource department; or (4) reported disciplinary or retaliatory conduct on the basis of a mental health disorder. (Filing No. 68 at 93, Filing No. 68 at 100).[1] These requests led to the current discovery dispute.

Defendant served responses to Plaintiff's discovery requests on October 15, 2025. (Filing No. 68 at 93, Filing No. 68 at 100). Defendant again objected on the basis that the discovery requests were overly broad, unduly burdensome, and not relevant or proportional to the needs of the case because the employees in those positions are not comparators to Plaintiff. (Filing No. 59; Filing No. 69 at 4). The matter came on for a further discovery dispute call on November 5, 2025, during which Defendant argued that the second set of interrogatories and third request for production of documents was still too broad as Plaintiff sought information regarding employees who were not similarly situated or comparators, as discussed in the court's earlier order (Filing No. 56).

During that same call, Plaintiff's counsel indicated they were no longer seeking comparator evidence focusing on the conduct of the individual employees, but instead were seeking "pattern and practice" evidence regarding Union Pacific's conduct. Specifically, Plaintiff's counsel sought discovery of instances where Union Pacific discriminated against individuals for taking short term disability or having a mental health disability. (Filing No. 79, audio file at 12:30). Plaintiff sought evidence of what he believed was Defendant's widespread pattern of discrimination and/or retaliation against people with mental health disabilities. After further argument, the court concluded again that the discovery requests

---

[1] The court notes that Plaintiff's index of evidence in support of the motion to compel purportedly included Exhibit A: UP's Answers to Plaintiff's 2nd Set of Interrogatories, and Exhibit B: UP's Responses to Plaintiff's 3rd Request for Production of Documents. (Filing No. 64). The exhibits identified were not attached. Defendant noted the oversight in its response to the motion to compel (Filing No. 69 at 4, n. 1), and included the documents as Exhibits 13 and 14 in its own index of evidence (Filing No. 68). As Plaintiff's omission appears to be inadvertent, there was no formal objection from Defendant to the omission, and the documents were disclosed in discovery, the court reviewed Filing No. 68 in preparing this order.

3

were overbroad and permitted Defendant to stand on its objections. (Filing No. 59). But recognizing that the dispute would likely continue, the court permitted Plaintiff to file a formal motion to compel. Therein, Plaintiff acknowledges it now seeks to compel "pattern and practice" discovery, as opposed to comparator evidence, in an attempt to establish a pattern of discrimination and retaliation against employees in violation of the Americans with Disabilities Act. (Filing No. 63 at 1).

## II.   ANALYSIS

"Generally, parties may obtain discovery regarding any unprivileged matter so long as it is relevant to the subject matter of the pending action." *Sikora v. Nat'l Indem. Co.*, No. 8:13CV68, 2013 WL 5524551, at *2 (D. Neb. Oct. 4, 2013); *see also McGowan v. Gen. Dynamics, Corp.*, 794 F .2d 361, 363 (8th Cir.1986). Information within the scope of Rule 26(b) "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1), and the scope of permissible discovery is broader than the scope of admissibility. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 at 380 (8th Cir. 1992). However, courts may limit discovery where requests are excessively broad and call for the production of irrelevant information. *Sikora,* 2013 WL 5524551, at *2; *McGowan* 794 F .2d at 363. The party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery." *Hofer,* 981 F.2d at 380. The scope of permissible discovery under Rule 26(b)(1) is limited by the "proportionality" or balancing test set forth in Rule 26(b)(2)(C). Under Rule 26(b)(2)(C):

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

Plaintiff references *United States v. Univ. of Nebraska at Kearney,* 2014 WL 4215381, at *2 (D. Neb. Aug. 25, 2014), in which Magistrate Judge Zwart noted "[c]ourts have permitted plaintiffs alleging a practice or pattern of discrimination to prove their case with evidence of Defendant's other discriminatory actions. (*Citing Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir.1983); *Miller v. Poretsky*, 595 F.2d 780, 790–791, 796 (D.C.Cir.1978) (Robinson, J., concurring) (evidence of past acts of discrimination is relevant to prove motive in discrimination cases). But unlike in *Univ. of Nebraska,* Plaintiff in this case has not alleged that he is part of a class or alleged a pattern or practice claim. (Filing No. 1).

A pattern or practice claim is often asserted in class actions, while individual plaintiffs claiming retaliation or discrimination prove intentional discrimination either by direct or indirect evidence. Direct evidence is shown through evidence of conduct or statements by persons involved in the decision making process viewed as directly reflecting the alleged discriminatory attitude, and indirect evidence is shown by creating an inference of discrimination or retaliation under the *McDonnell Douglas* burden-shifting framework. *Lipp v. Cargill Meat Solutions Corporation,* 911 F.3d 537 (8th Cir. 2018) (applying *McDonnell Douglas* to an ADA claim); *See, also, Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015) (applying *McDonnell Douglas* to a Title VII claim).

*McDonnell Douglas* requires an individual plaintiff to establish a prima facie case of discrimination before the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for its adverse action. *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121 (8th Cir. 2017). Then, if the employer satisfies its burden, the presumption disappears and the plaintiff must provide evidence demonstrating the nondiscriminatory reason is mere pretext for intentional discrimination. *Id.* at 1125. Pretext is shown by showing an employer "(1) failed to follow its own policies, (2) treated

5

similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Id.* (*citing Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015)). The test to determine whether someone is sufficiently similarly situated is "rigorous" and those comparators must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Id.*

Here, the court has already denied Plaintiff's requests for comparator evidence of those who were deemed not likely to be considered similarly situated. (Filing No. 56). Plaintiff now seeks the disciplinary, personnel, and complaint files for all general managers, STOs, MYOs, and MTOs in Torres' chain of command. The job descriptions for the general manager, STO, MTO, and MYO positions contain different duties and responsibilities and the employees who work in those roles are not necessarily similarly situated to Plaintiff. (Filing No. 68 at 3-16). The current request appears to be an end-run around the court's prior discovery rulings that were based upon Eighth Circuit authority and Plaintiff has not shown how this information would be relevant or assist him in proving his case under the *McDonnell Douglas* framework.

In support of his motion to compel, Plaintiff refers to several cases for the broad proposition that pattern and practice evidence may sometimes be relevant in individual or direct discrimination cases like his. Some of the cases bear mention here and are distinguishable. In *Brown v. West Corp.* 287 F.R.D. 494, 500-01 (D. Neb. 2012), for example, the district court noted that while other complaints indicating a pattern of racial discrimination may be circumstantial evidence of individual discriminatory intent, it emphasized that the evidence would be of "marginal" relevance. The court then referenced other Eighth Circuit authority indicating it was appropriate to "limit[] the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery." *Id.* (quoting *Sallis v. Univ. of Minn*, 408 F.3d 470, 478 (8th Cir. 2005)). The court also rejected the plaintiff's efforts to obtain discovery of company statistics for similar reasons because the plaintiff failed to

show any "particularized need and relevance to move beyond the source of the complained of discrimination." *Id.* (internal quotation and citation omitted). The court noted in particular that "[g]iven the individualized allegations of discrimination, it is unlikely that any useful comparisons can be made . . . . Therefore, the plaintiff's request must be limited to the makeup of those who have been subject to the hiring, firing, or direct managerial control of those individuals the plaintiff is accusing of discriminatory treatment." *Id.* at 502.

Plaintiff also argues that *Sallis*, 408 F.3d 470, permits the discovery of other complaints of discrimination so long as they focus on the decisionmakers and departments relating to the plaintiff's employment and discipline. But there, the court indicated the requests were too broad because Plaintiff sought discovery from the whole university including all departments, rather than the one department plaintiff worked in. The circuit court emphasized that "[c]ourts have limited the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery." *Id.* at 478 (internal citation omitted). The court then agreed with the magistrate judge's determination (adopted by the district court) that the requested discovery was, among other things, overly broad. *Id.*

Similar reasoning applies here. While the court recognizes that Plaintiff seeks the complaints of employees within Torres' chain of command, it goes too far to request disclosure of complaints of all designated employees in an entire railroad region if not at least limited to those similarly situated employees or even those individuals in the same or similar position. *See Univ. of Nebraska 2014 WL 4215381* at *4, citing *Sallis*, 408 F.3d 470 (holding Plaintiff's request for information on every allegation of employment discrimination against the defendant was overly broad and unduly burdensome, and district court was entitled to limit discovery to information regarding the department in which plaintiff worked). The broad requests also have other potential effects, including implicating privacy concerns for those employees who had requested accommodation or raised discrimination or retaliation concerns. It may also chill future reporting if "by doing

7

so, their private files can be scoured through by the federal government for a wholly related case." See *Univ. of Nebraska,* at *6.

Accordingly,

IT IS ORDERED:

1) Plaintiff's motion to compel is denied. ([Filing No. 62](#)).
2) The status conference set for January 13, 2026 at 9:00 a.m. to discuss case progression, the parties' interest in settlement and the trial and pretrial conference settings is now continued and will be held **February 12, 2026 at 9:00 a.m.**

Dated this 12th day of January, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge